UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 10-CV-2511 (JFB)(AKT)
_____

DAVID HIMBER, ABRAHAM BELL, AND MELISSA KIVO, ON BEHALF OF THEMSELVES
AND A CLASS,

Plaintiffs,

VERSUS

INTUIT, INC., EZSHIELD SALES CO., DIRECT CHECKS UNLIMITED SALES, INC. AND
CAROUSEL CHECKS, INC.,

Defendants.

_____

**MEMORANDUM AND ORDER**
September 25, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs David Himber ("Himber"), Abraham Bell ("Bell") and Melissa Kivo ("Kivo") (collectively the "plaintiffs"), on behalf of themselves and a class, filed this action against defendants, Intuit, Inc. ("Intuit"), EZShield Sales Co. ("EZShield"), Direct Checks Unlimited Sales, Inc. ("Direct Checks") and Carousel Checks, Inc. ("Carousel") (collectively the "defendants"), alleging that the defendants violated Sections 349 and 350 of the New York General Business Law ("NYGBL"). Specifically, plaintiffs allege that the description of EZShields' products as products that afford "insurance," "protection," or "coverage" is false advertising and deceptive in violation of the NYGBL. According to plaintiffs, the EZShield product is, *inter alia*, described as providing protection for customers against fraudulent checks written against their account by providing reimbursement of up to $25,000 within 72 hours, in exchange for a fee of two cents per check. In connection with these allegations, plaintiffs assert causes of action under Sections 349 and 350, on behalf of themselves (and a purported class) that seek "redress for the sale and advertisement of an unauthorized insurance products in the state of New York." (Third Amended Complaint ¶ 1.) In particular, plaintiffs assert that defendants' offering of products, which are known as Check Fraud Prevention, should have been registered with the New York State Insurance Department, and that the failure to do so injured Check Fraud Protection purchasers and entitled

them to a recovery under the above-referenced consumer protection statutes.[1] The harm or injury alleged by plaintiffs is that, had these products been regulated as insurance, New York State would not have allowed a premium or charge of two cents per check.

EZShield, Direct Checks and Carousel, have moved to dismiss the Third Amended Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and argue that plaintiffs lack standing and have not stated a claim for relief under the NYGBL. Moreover, EZShield, Direct Checks and Carousel claim that the EZShield products are not insurance. Intuit filed a Notice of Motion to Dismiss the Third Amended Complaint, in which it joined in the arguments made by the other defendants.

For the reasons set forth below, the motions are granted and the Third Amended Complaint is dismissed in its entirety for lack of Article III standing. The injury alleged by plaintiffs is that the product and services they purchased from defendants should be regulated by New York State as insurance and, because of the absence of such regulations, plaintiffs are paying more for the product and services and thus are being harmed. The injury alleged by plaintiffs is hypothetical and speculative, and thus, cannot be the basis for Article III standing. The series of links in plaintiffs' "standing" chain are as follows: (1) the products at issue should be categorized as "insurance" under New York law, even though New York State has never so ruled; (2) if New York State decided to regulate the products as insurance, the premiums charged by defendants for their product are higher than the State would approve; and (3) plaintiffs are therefore being harmed by having to pay more for an unregulated, insurance product. This theory of standing falls many miles short of what is constitutionally required under Article III. It is well settled under Supreme Court and Second Circuit jurisprudence that there is no standing where a finding of harm is contingent on the discretionary decision of an independent actor – in this case, the New York State Insurance Department – whom the courts cannot control or predict. In Supreme Court and analogous Second Circuit cases, plaintiffs are making a futile attempt to establish standing by arguing that the lawsuit, if successful, will result is some prospective benefit being bestowed upon them by the third party. Here, the benefit is even more hypothetical and speculative because plaintiffs seek to show, *with respect to the past*, that a third party regulator could have (but did not) make a decision to regulate defendants *and*, because of the lack of regulation and presumably lower premiums, defendants were able to harm plaintiffs by overcharging them. In other words, to award damages in this case, a jury would have to hypothesize that New York State would consider these products to be insurance and then speculate as to what rates the State would have permitted defendants to charge. Standing simply cannot lie for such a nebulous, unprovable prediction of third party decisions. Therefore, although plaintiffs dress their harm in the cloak of an "overcharge" (a term which would generally suggest harm and standing to sue), such alleged overcharge confers no standing when it is dependent upon hypothetical regulation by the New York State Insurance Department and speculation about what it

---

[1] As of October 2, 2011, the New York State Insurance Department was combined with the New York State Bank Department to create the Department of Financial Services. However, the Court, consistent with the Third Amended Complaint, will refer to it as the New York State Insurance Department because the allegations here date back to 2010.

would have viewed as an excessive rate for such an insurance product. Accordingly, the Third Amended Complaint is dismissed in its entirety for lack of standing.

I. BACKGROUND

A. Facts

The following facts are taken from the Third Amended Complaint and are not findings of fact by the Court. Instead, the Court assumes these facts to be true for purposes of deciding the pending motion to dismiss and will construe them in a light most favorable to plaintiff, the non-moving party.

1. The EZShield Product

EZShield offers fraud protection and identity restoration products (the "EZShield products") which it describes as affording "protection" which "cover[s] your checks against forged signatures, forged endorsements and altered checks." (TAC[2] ¶ 11.) The EZShield products have been sold since at least 2006 and are sold through business such as Intuit, Direct Checks and Carousel, that sell checks to individuals and small businesses. (*Id.* ¶¶ 12-13.) According to plaintiffs, the EZShield products are unlawful insurance products that are not sold by authorized persons because: (1) the EZShield products have not been issued by an insurance company; (2) the terms of the EZShield products have not been filed with or approved by the New York State Insurance Department; (3) the rates for the products have not been filed with or approved by the New York State Insurance Department; and (4) EZShield, Intuit, Direct Checks and Carousel, as well as others selling the EZShield products, are not licensed to sell insurance. (*Id.* ¶ 20; *see id.* ¶¶ 15-19.) Thus, according to plaintiffs, persons, such as plaintiffs, who purchase the EZShield products are deprived of the protections afforded persons who purchase insurance in New York.[3] (*Id.* ¶ 21.) Moreover, plaintiffs allege that "[o]n information and belief, the amount collected for the EZShield product, in light of the losses paid, would not merit its approval by the New York State Insurance Department." (*Id.* ¶ 22.)

2. Specific Sales of the EZShield Products

On or about May 24, 2010, Himber purchased 250 checks from Intuit and paid $5 for an EZShield product. (*Id.* ¶ 23.) Intuit describes the EZShield product as "fraud protection insurance," and includes the EZShield product with the purchase of checks unless the purchaser opts out. (*Id.* ¶ 25.) Intuit also refers to the EZShield product as "coverage." (*See id.* ¶ 26.)

On or about October 8, 2010, Bell purchased 250 checks from Direct Checks and paid $7.95 for the EZShield product, "EZShield Plus Protection Program." (*Id.* ¶ 27.) Direct Checks includes the EZShield Plus Protection Program in sales of checks unless the consumer opts out. (*Id.* ¶ 29.) Direct Checks uses the words "protection" and "coverage" for "recoverable losses" when describing the product. (*See id.* ¶ 30.)

---

[2] "TAC" refers to the plaintiffs' Third Amended Complaint.

[3] According to plaintiffs, those protections include "(a) The regulation of rates and terms by the State Insurance Department, so that a price of the insurance is reasonable compared to both the coverage afforded and the claims paid; (b) The regulation of claims handling by the State Insurance Department; (c) The regulation of insurance brokers and sellers by the State Insurance Department, so the false and misleading representations are not made in connection with insurance products." (TAC ¶ 21.)

3

On or about November 2, 2010, Kivo purchased checks from Carousel and paid $7.95 for the EZShield product, "EZShield Fraud Protection." (*Id.* ¶ 31.) This product is included with the purchase of checks unless the consumer opts out. (*Id.* ¶ 33.) EZShield Fraud Protection is described using the word "protection." (*See id.* ¶ 34.)

B. Procedural History

Defendant Intuit filed a motion to dismiss the Second Amended Complaint for lack of jurisdiction on April 29, 2011. Plaintiffs then requested leave to file a Third Amended Complaint. The parties briefed Intuit's motion to dismiss and plaintiffs' motion to file a Third Amended Complaint. On July 18, 2011, the Court denied Intuit's motion to dismiss and granted plaintiffs' motion to file a Third Amended Complaint. Plaintiffs' filed the Third Amended Complaint on July 25, 2011.

EZShield, Direct Checks and Carousel requested a pre-motion conference in anticipation of moving to dismiss the Third Amended Complaint on September 23, 2011 and, after the Court set a briefing schedule at the telephone pre-motion conference, filed its motion on November 8, 2011. Intuit filed a notice of motion to dismiss the plaintiffs' Third Amended Complaint which stated that "[f]or the reasons set forth in the Memorandum of Law filed today on behalf of EZShield Sales Co., Direct Checks Unlimited Sales Co., and Carousel Checks, Inc., the undersigned will move this Court . . . for an Order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing the Third Amended Complaint with prejudice as to Defendant Intuit Inc. . . ." Plaintiffs filed their opposition to EZShield, Direct Checks and Carousel's motion on December 22, 2012.

On January 18, 2012, EZShield, Direct Checks and Carousel filed their reply.

Oral argument was held on March 5, 2012. At the oral argument, the Court requested supplemental briefing on the issue of standing. In particular, the Court asked plaintiff to provide any case authority anywhere in the United States where "the theory of harm is that if this product had been properly . . . subject to regulation . . . the price would have been lower to me and, therefore, I'm harmed by their failure to get a license. . . ." (Tr.[4] at 28.) Plaintiffs filed their supplemental submission on March 26, 2012 and EZShield, Direct Checks and Carousel replied on April 13, 2012. On July 10, 2012, plaintiffs submitted additional supplemental authority, which defendants responded to on August 1, 2012. The Court has fully considered all of the arguments presented by the parties.

II. STANDARD OF REVIEW

When a court reviews a motion to dismiss for lack of subject-matter jurisdiction, it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

---

[4] "Tr." refers to the transcript of the oral argument that took place on March 5, 2012.

When a Court reviews a motion to dismiss for failure to state a claim for which relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (internal citations omitted) (quoting and citing *Twombly*, 550 U.S. at 556-57).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss)

III. DISCUSSION

Defendants argue that plaintiffs lack standing because they have failed to allege

that they have suffered from an injury-in-fact. For the reasons set forth below, the Court finds that the plaintiffs lack standing to bring this action.

A.  Article III Standing

As the Second Circuit has explained, "Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (citing U.S. Const. art. III, § 2 and *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471-72, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)), *cert denied sub nom Sincerely Yours, Inc. v. Cooper*, 130 S.Ct. 1688 (2010). "It is axiomatic that '[t]here are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision.'" *Id.* (quoting *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009)); *see also Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 373 (2d Cir. 2004) ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant." (internal quotation marks omitted)).

To meet Article III's injury-in-fact requirement, plaintiff's alleged injury "must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (additional quotation marks omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); *see, e.g.*, *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (finding that plaintiffs had adequately articulated Article III injury by alleging that they have paid higher tolls as a result of defendant's policy). Furthermore, the alleged injury must "affect[ ] the plaintiff in a personal and individual way to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." *Baur*, 352 F.3d at 632 (internal quotation marks and citations omitted).

B.  Application

As a threshold matter, the Court notes that there are no allegations in the Third Amended Complaint that the plaintiffs (or the purported class members) were denied any services by any of the defendants, or that the Check Fraud Protection did not (or would not) work as EZShield had represented. Moreover, there is no allegation in the Third Amended Complaint that, but for some alleged misrepresentation by the defendants, plaintiffs would not have purchased the product at all.[5] Instead, the

---

[5] The Court confirmed this at oral argument:

> THE COURT: Okay. But you do not allege that they would not have bought the product but for the reference to the term "insurance." There's nowhere in here that it alleges that, right?
>
> [Plaintiffs' counsel]: You're correct, Your Honor. That –
> THE COURT: Okay.
>
> [Plaintiffs' counsel]: We did not so specify.

(Tr. 18.)

6

theory of the case is that plaintiffs paid more not because of a misrepresentation, but because the products are not regulated as insurance products and they should be. According to plaintiffs, "[u]nderlying all of Plaintiffs' allegations is the proposition that Plaintiffs were clearly damaged by the fact that they have purchased an unregulated insurance product which either costs too much or is essentially worthless." (Pls.' Opp. Br. at 5.) Plaintiffs argue that an alleged overcharge from lack of regulation is a sufficient injury-in-fact to satisfy the standing requirements.[6] (Pls.' Opp. Br. at 5-6.)

Defendants concede that an overcharge can generally be the basis for an injury-in-fact. (Defs.' Reply Br. at 9.) However, the moving defendants argue that this alleged overcharge is too speculative to amount to an injury-in-fact. Specifically, defendants contend that plaintiffs' allegation that they were overcharged for the EZShield products is "conjectural or hypothetical" because it would require the jury to: (1) speculate that the charge of two cents per check is too much; (2) speculate that the New York State Insurance Department would not approve the EZShield product; and (3) speculate that the New York State Insurance Department would not approve the EZShield product at its current price and would require a lower charge. (*Id*. at 8-9.) This Court agrees with defendants, and concludes that plaintiffs lack standing to bring this action.

As noted above, plaintiffs conceded both in their papers (and at oral argument) that their theory of harm here, for purposes of standing, is that they were overcharged by defendants for the product because it should have been regulated by New York State as insurance and was not. (*See* Pls.' Opp. Br. at 5 (quoted above); *see also id*. (plaintiffs' allegations here are "that the illegal insurance product lacks the protections of New York Insurance Law or that the premiums were higher than the state would approve" and "[a]llegations of even a small overcharge are sufficient").) Indeed, the plaintiffs' summary of the facts in the opposition papers is perhaps the clearest explanation of the theory of harm, which is contingent upon a hypothetical about the decisionmaking of a third party – namely, the New York State Insurance Department – in terms of whether the product is insurance and what the premium would be:

> The EZ Shield Product is not issued by an insurance company, its terms have not been filed with or approved by the State Insurance Department, its rates have not been filed with or approved by the State Insurance Department, and Defendants are not licensed or authorized to sell insurance. Consumers who purchase the EZ Shield Product are deprived of the protections afforded consumers who purchase legal insurance in New York, including the regulation of rates and terms by the State Insurance Department, the regulation of claims handling by the State Insurance Department, and the

---

[6] At oral argument, the moving defendants argued that the plaintiffs' Third Amended Complaint is devoid of any allegation of an overcharge and that none can be inferred from the allegations. (*See* Tr. at 5-7.) However, as noted at oral argument, this Court disagrees. Paragraph 22 of the Third Amended Complaint states that "On information and belief, the amount collected for the EZShield product, in light of the losses paid, would not merit its approval by the New York State Insurance Department." (TAC ¶ 22.) Although this allegation is inartfully pled, the Court construes it as an allegation that plaintiffs have been overcharged because the lack of regulation by the New York State Insurance Department. However, as discussed *infra*, a finding by the jury as to the alleged overcharge would be conditioned upon hypothetical and speculative decisions by the New York State Insurance Department and, thus, not sufficient to confer Article III standing.

regulation of insurance brokers and sellers by the State Insurance Department. Further, the amount collected for the EZShield Product, in light of the losses paid, would not merit its approval by the New York State Insurance Department. In other words, had the product been issued by an insurer licensed by the state, the state would have imposed a lower premium.

(*Id*. at 1.) In other words, plaintiffs are requesting that the Court issue a judgment that the products at issue were insurance under New York Law (even though the New York Insurance Department has made no such determination) and then find what the Insurance Department would have done (in terms of setting premiums) if they had regulated it in order to find an injury-in-fact.

As the jurisprudence of the Supreme Court and Second Circuit has clearly articulated, claims of harm based upon speculation regarding decisions by third parties is insufficient to confer Article III standing. It is well settled that there is no redressability, and thus, no standing, where any prospective benefits depend on an independent actor who retains "broad and legitimate discretion [that] the courts cannot presume either to control or to predict." *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989). For example, in *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 28 (1976), plaintiffs sought to challenge the IRS's approval of favorable tax treatment for "nonprofit hospital[s] that offered only emergency-room services to indigents." In connection with that challenge, the indigent plaintiffs claimed that the IRS policy "encouraged hospitals to deny services to indigents," and had caused denial of medical services to plaintiffs. *Id*. at 40-42 (internal quotation marks omitted).

In holding that the plaintiffs' allegations were insufficient to establish standing, the Supreme Court emphasized that "the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Id.* at 41-42. The Court further explained:

> It is purely speculative whether the denials of service specified in the complaint can be traced to petitioners' "encouragement" or instead result from decisions made by the hospitals without regard to the tax implications. It is equally speculative whether the desired exercise of the court's remedial powers in this suit would result in the availability to respondents of such services. So far as the complaint sheds light, it is just as plausible that the hospitals to which respondents may apply for service would elect to forgo favorable tax treatment to avoid the undetermined financial drain of an increase in the level of uncompensated services.

*Id*. at 42. Thus, the Court concluded that "the complaint suggests no substantial likelihood that victory in this suit would result in respondents' receiving the hospital treatment they desire," and further noted that "[a] federal court, properly cognizant of the Art. III limitation upon its jurisdiction, must require more than respondents have shown before proceeding to the merits." *Id.* at 45-46.

Similarly, in *Garelick v. Sullivan*, 987 F.2d 913, 918 (2d Cir. 1993), plaintiffs argued they had standing to challenge a statute that imposed caps on the fees

8

physicians could charge for certain services because the statute resulted in physicians charging higher rates for limited income patients, such as plaintiffs. The Second Circuit found those allegations of rate increases allegedly caused by the statute to be insufficient to confer standing on plaintiffs to challenge the statute:

> [E]ven if some physicians chose to increase their charges to limited-income patients in response to the limiting charge scheme, the plaintiff beneficiaries probably would still lack standing. Any increases in the amounts charged to limited-income patients would be the product of independent choices by physicians from among a range of economic options, . . . not a necessary product of the challenged legislative scheme. Because the beneficiary plaintiffs have failed to establish that their injuries are fairly traceable to the limiting charge scheme, they lack standing to assert their claims.

*Id.* at 919-20; *see also Green Island Power Auth. v. Federal Energy Regulatory Comm'n*, 577 F.3d 148, 161 (2d Cir. 2009) ("In this case, Albany's injury is purely speculative. If School Street were not licensed, then Albany would stand to profit from its relationship with Green Island only if (1) Green Island carried through with its stated intention of filing a license application for the Cohoes Falls Project, (2) Green Island continued to use Albany as a consultant on that project, and (3) work needed to be performed by Albany as Green Island competed for that license."); *Burton v. Cent. Interstate Low-Level Radioactive Waste Compact Comm'n*, 23 F.3d 208, 210 (8th Cir. 1994) (holding that plaintiff had no standing because the complaint "does not allege . . . that state law obligates [the provider] to base its rates in any way on [the] costs" at issue, and therefore "it is merely speculative here whether a favorable decision would affect the . . . rate that [plaintiff] pays" (internal quotation marks omitted)); *Common Cause v. Dep't of Energy*, 702 F.2d 245, 251 (D.C. Cir. 1983) ("[W]here injury is alleged to occur within a market context, the concepts of causation and redressability become particularly nebulous and subject to contradictory, and frequently unprovable, analyses.").

Although the speculation rejected by these court decisions was based upon *future* decisions of third parties, the analysis applies equally to speculation, as in this case, as to what an independent third party would have done regarding premiums if it had decided to regulate the products at issue as insurance. In *Martin v. International Dryer Corporation*, 637 F. Supp. 101 (E.D.N.C. 1986), the court faced an analogous situation and found no standing. Plaintiffs in *Martin* claimed that their injury from an exploding dryer was the result of a failure by the defendant manufacture to disclose to the Consumer Product Safety Commission, as required by regulation, information about the product hazards of the dryer. Thus, plaintiffs sued under federal law for the defendants' alleged reporting violations. In holding that no standing existed for such a claim, the Court explained:

> Causation requires a rational relationship between cause and effect. Constitutional standing will not tolerate speculation and random chance as a basis for connecting an injury with a duty. The facts of this case demonstrate a lack of causal connection between the alleged violation of [16 C.F.R.] § 1115 and the plaintiffs' injuries. To connect these events in law the plaintiffs must supply the decision that the

Consumer Product Safety Commission would have made had there been a prior disclosure under [16 C.F.R.] § 1115. This element does not exist and cannot be supplied to cure the causation defect which defeats standing in this case.

*Id*. at 104. The court further emphasized that:

> Plaintiffs speculate that the Commission, a third party not before this court, would have acted on any information allegedly withheld by the defendants. It is also speculation that Commission action would produce rules or orders regulating the products at issue in this case thereby preventing plaintiffs' injuries. Speculation is an inadequate basis for Article III standing.

*Id*. That is precisely the situation here. Plaintiffs' entire theory of injury is contingent upon their position that (1) the products at issue should be regulated as insurance by New York State even though they are not, and (2) if they were regulated, the premiums that defendants would be allowed to charge for these products would be lower. No standing exists for this type of hypothetical, speculative harm that was preventable only by the discretionary decisions of third parties. *See generally Three S Consulting v. United States*, 104 Fed. Cl. 510, 521 (Fed. Cl. 2012) ("[T]he basis for plaintiff's standing claim is too attenuated. The court cannot speculate as to what would have happened had the government initially found MHLI's proposal nonresponsive and then elected to reject the remaining proposal. . . ."); *Lamborn v. WM. M. Hardie Co.*, 1 F.2d 679, 682 (6th Cir. 1924) ("For a jury to decide now what the plaintiffs would have done if the problem had been different is plainly to speculate on a probability; and rights may not ordinarily stand or fall on such a speculative basis."); *Grocer's Co-op Dairy Co. v. City of Grand Haven*, 79 F. Supp. 938, 944 (W.D. Mich. 1948) ("This court cannot speculate or conjecture on what the city clerk would have done if he and the city health officer had been given the opportunity to act upon plaintiff's application.").

Plaintiffs attempt to avoid the clear lack of a non-speculative harm by arguing that they are seeking statutory damages under Sections 349 and 350 and that "[a] right to recover[] statutory damages is enough to establish standing." (Pls.' Opp. Br. at 7.) However, that argument is equally unavailing. Although statutory damages are available under Sections 349 and 350, those provisions do not dispense with the requirement of harm and standing. To the contrary, one of the elements of the cause of action itself is injury. As the Second Circuit has recently reiterated, "[a] § 349 claim has three elements: (1) the defendants' challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." *Cohen v. J.P. Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). Section 350 likewise requires injury. *See Rodriguez v. It's Just Lunch, Int'l*, No. 07-cv-9227(SHS)(KNF), 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010) ("The standard for recovery under [GBL] Section 350, while specific to false advertising, is otherwise identical to [GBL] Section 349.") In fact, Section 349(h), which allows for the private right of action explicitly states that the party must demonstrate an actual injury. *See* N.Y.G.B.L. Section 349(h) ("[A]ny person

*who has been injured* by reason of any violation of this section may bring an action in his own name."). Thus, the lack of a non-speculative, non-hypothetical injury in this case is not cured by the existence of statutory damages under the relevant statutory provisions.[7]

In short, plaintiffs' allegations are insufficient to establish standing, whether based upon actual or statutory damages, because establishing the alleged harm (in the form of an overcharge) is contingent upon retrospective speculation about, *inter alia*, what premiums an independent third party regulator would have set if it had regulated these products, even though it did not. Therefore, plaintiff has no standing based upon any alleged overcharge by the defendants because the premiums were allegedly too high in the absence of state regulation.

At oral argument, the Court requested supplemental briefing seeking any case where the theory of harm for standing purposes was that "if this product had been properly . . . subject to regulation . . . the price would have been lower to me, and therefore, I'm harmed by their failure to get a license. . . . (Tr. 28). In response to that request, plaintiffs directed the Court to three cases. (*See* Pls.' Letter, Mar. 26, 2012, ECF No. 68.) However, none of these cases support the theory of harm proposed by plaintiffs.

First, plaintiffs rely on the cases *Learjet Corp. v. Spenlinhauer*, 901 F.2d 198 (1st Cir. 1990), and *Rodriguez v. McKinney*, 156 F.R.D. 112 (E.D. Pa. 1994). (*See* Pls.' Letter, Mar. 26, 2012, ECF No. 68.) However, both of these cases are distinguishable from the case at bar and neither addressed the theory of harm that the Court asked the parties to address. In *Learjet*, a manufacturer made a misrepresentation to the Federal Aviation Administration which resulted in a customer being required to spend $40,000 to upgrade a jet in order for it to qualify for an airworthy certificate. *Learjet*, 901 F.2d at 203. Similarly, in *Rodriguez v. McKinney*, vocational school students brought an action alleging that a school operator misrepresented the students' eligibility to benefit from the school's programs to the Department of Education. *Rodriquez v. McKinney*, 156 F.R.D. at 113-14. However, unlike the case at bar, in both *Learjet* and *Rodriquez*, the defendants lied to a regulatory authority, which resulted in the regulatory agency making a determination based on fraud, which led to a loss by the plaintiff. Here, there has been no allegation of misrepresentation to the New York State Insurance Department. In addition, neither *Learjet* nor *Rodriquez* addressed the theory of harm proposed in this case, namely, if the EZShield product had been regulated, the plaintiffs would have paid less for the product because of the decisions of the government entity.

Moreover, plaintiffs' reliance on *Seekamp v. Fuccillo Auto Grp., Inc.*, 09-cv-0018, 2010 U.S. Dist Lexis 23786 (N.D.N.Y. Mar. 15, 2010), is also misplaced. (*See* Pls.' Letter, Mar. 26, 2012, ECF No. 68.) In *Seekamp*, the Northern District of New York found that an Auto Theft Security Discount Guarantee program ("ATSD") could qualify as insurance and denied the defendants' motion to dismiss. *Id*. at *19. However, in *Seekamp*, the New York State Insurance Department had already issued findings indicating that the product was insurance within the meaning of New York Insurance Law. *Id*. at *17-18. Here, no such findings have been made by

---

[7] For the same reason, *i.e.*, the lack of a cognizable injury, plaintiffs also fail to state a plausible claim under Sections 349 and 350 (in addition to lacking standing).

the New York State Insurance Department on the EZShield products, or a similar check fraud protection product. Accordingly unlike in *Seekamp*, the Court cannot determine in this case, without speculating, whether the New York State Insurance Department would regulate the EZShield products, and if so, what the consumer would be charged.

Plaintiffs try to overcome this issue by claiming that "[t]he National Association of Insurance Commissioners has established 60% as 'the *minimum* reasonable benefit consumers should expect in relation to premiums paid.'" (Pls.' Letter, Mar. 26, 2012, ECF No. 68. (emphasis in original).) Plaintiffs further state that "[h]ad the Defendants sought to properly license the EZShield Product, it likely would have come under New York Insurance Law § 3442, which governs credit card, debit card, or checking account group policies. Under § 3442, the minimum loss ratio would likely have been well above 60%." (*Id.*) However, plaintiffs' calculation is merely speculation as to what the New York State Insurance Department would do if the EZShield products had been regulated. As defendants correctly argue, "[n]either the Court nor the Plaintiffs should be allowed to substitute their judgment for that of the [New York State Insurance] Department." (Defs.' Letter, Apr. 13, 2012, ECF No. 70.) Defendants cite to the Second Circuit opinion *Wegoland Ltd v. NYNEX Corp.*, 27 F.3d 17, 19 (2d Cir. 1994), in which the Second Circuit stated that:

> Congress and state legislatures establish regulatory agencies in part to ensure that rates charged . . . are reasonable. This regime protects consumers while fostering stability. The regulatory agencies are deeply familiar with the workings of the regulated industry and utilize this special expertise in evaluating the reasonableness of rates. The agencies' experience and investigative capacity make them well-equipped to discern from an entity's submissions what costs are reasonable and in turn what rates are reasonable in light of these costs. . . As compared with the expertise of regulating agencies, courts do not approach the same level of institutional competence to ascertain reasonable rates.

(Defs.' Letter, Apr. 13, 2012, ECF No. 70. (citing *Id.*).) Although the context of *Wegoland* is different, the Court agrees that the reasoning is applicable to this case. Plaintiffs are asking this Court to speculate and conclude that the New York State Insurance Department would consider the EZShield products to be insurance and that the New York State Insurance Department would analyze the product and conclude that it should be less expensive. Plaintiffs have provided no legal authority for their statement that the minimum reasonable benefit consumers should expect in relation to premiums is 60%. Moreover, although plaintiffs claim that the EZShield product "*likely* would have come under New York Insurance Law § 3442" and "*likely* would have been well above 60%," (Pls.' Letter, Mar. 26, 2012, ECF. No 68. (emphasis added)), this is only speculation as to how the New York State Insurance Department would act.[8] Accordingly, because the plaintiffs' claimed harm is not "concrete and

---

[8] At oral argument, on this issue, plaintiffs' counsel conceded that there is no law or regulation that addresses what the exact, permissible premium would have been if the New York Insurance Department had regulated the product. (*See* Tr. 16 ("[B]ecause this product was never submitted to the Insurance Department, there is no decision addressing precisely what it has to be."))

12

particularized," but instead "conjectural or hypothetical," plaintiffs have not alleged an injury-in-fact, and thus, do not have standing. Therefore, plaintiffs' Third Amended Complaint must be dismissed.[9]

### IV. LEAVE TO RE-PLEAD

Although plaintiffs have not requested leave to re-plead their Third Amended Complaint, the Court has considered whether plaintiff should be given an opportunity to re-plead. Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") As discussed in detail *supra*, it is clear from the Third Amended Complaint that plaintiffs cannot establish standing in this case. Thus, where any amendment to the complaint would clearly be futile, dismissal without leave to re-plead is appropriate. *See, e.g.*, *Peterec-Tolino v. New York*, 364 F. App'x 708, 711 (2d Cir. 2010) (affirming district court's *sua sponte* dismissal of § 1983 claims without leave to amend because, *inter alia*, certain defendants were not state actors and "[a]ny amendment would be futile").

In addition, plaintiffs have not requested an opportunity to re-plead, and have failed to explain how any amendment could possibly state a plausible legal claim. Thus, the Court declines to grant leave to re-plead. *See, e.g.*, *Ackerman v. Doyle*, 43 F. Supp. 2d 265, 275 (E.D.N.Y. 1999) ("[T]he Court is unable to discern a viable cause of action from the complaint, and the plaintiff did not request leave to replead. The Court declines to *sua sponte* afford the plaintiff leave to amend on the ground of futility. In the Court's view, granting leave to amend would be unproductive and dismissal with prejudice is appropriate.").

Finally, plaintiffs have been given ample opportunity to allege a claim and have failed to do so. This is plaintiffs' *Third* Amended Complaint over a period of several years. However, plaintiffs' Third Amended Complaint still does not allege standing. Under these circumstances, the Court declines to grant plaintiffs yet another opportunity to re-plead. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim" (citing *Armstrong v. McAlpin*, 699 F.2d 79, 93-94 (2d Cir. 1983) ("Because the complaint whose allegations were being considered by the district court was plaintiffs' second amended complaint, the district court did not abuse its discretion in refusing to give plaintiffs a fourth attempt to plead."))).

---

[9] In the alternative, defendants argue that plaintiffs' Third Amended Complaint must be dismissed on the ground that plaintiffs fail to state a claim for relief under either Section 349 or 350 of the NYGBL because check fraud protection is not an insurance contract under New York law, and the sale of that product is not deceptive under Sections 349 and 350. In particular, defendants argue that "CFP is not insurance under New York law for several reasons, including that EZShield does not assume the risk of loss upon the consumer's purchase of CFP. CFP has been available in all 50 states for 10 years, and not one jurisdiction has held it to be insurance." (Defs.' Br. 1-2.) However, given the dismissal for lack of standing, the Court need not address that alternative argument.

## V. Conclusion

For the reasons set forth herein, defendants' motions to dismiss the Third Amended Complaint for lack of standing, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, are granted. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 25, 2012
Central Islip, NY

\* \* \*

Plaintiffs are represented by Dan Edelman, Esq. and Cathleen M. Combs, Esq., of Edelman, Combs, Latturner & Goodwin, 120 South Lassalle Street, 18th Floor, Chicago, IL, 60603. Defendant Intuit, Inc. is represented by Fredric S. Newman, Esq., Sheryl B. Galler, Esq. and Jared Ryan Jenkins, Esq., of Houget, Newman, Regal & Kenney LLP, 10 East 40th Street, 35th Floor, New York, NY 10016. Defendants EZShield Sales Co., Direct Checks Unlimited Sales, Inc. and Carousel Checks, Inc. are being represented by Brendan James Murphy, Esq., Jason M. Koral, Esq. and Robert B. Lovett, Esq., of Cooley LLP, 500 Boylston Street, 14th Floor, Boston MA, 02116 and 1114 Avenue of the Americas, New York, NY 10036.